Severance Plan. Mr. Bartolek. May it please the Court. This is a case about whether a clause in a severance plan requiring receipt of a memo from Human Resources grants any discretion to not deliver the memo. Whether the employees were eligible to participate in the plan is not at issue in this case. Only the conditions to receive benefits were at issue. The District Court erred for three reasons. On the claim for benefits, the plan language does not afford a Vice President of Human Resources discretion to withhold the memo from an otherwise eligible employee. Second, Northrop breached its fiduciary duty to disclose a change in interpretation. The plan term stayed the same, but the interpretation changed. Northrop knew its employees believed they would receive the memo if they were otherwise eligible through its decade of applying the severance into its federal contracts, but it wouldn't disclose the new interpretation because it was scared that if employees knew, they'd leave before Northrop could complete the contracts. Regarding the Section 510 claim, the evidence shows Northrop withheld the memos in order to avoid the cost of paying the severance. The most important facts in this case are the plan language nowhere states the VP of Human Resources has discretion whether or not to deliver the memo. When business unit management decided who would be covered by the plan, Northrop coded those employees as eligible for severance and listed them as participants in the Form 5500s. Upon entry of a layoff separation codes, the employees coded as eligible automatically received the non-cash portion of severance, even though the eligibility criteria for cash and non-cash severance were the same. Before October 2011, Northrop always interpreted the memo clause as a required notification to wait off employees coded as severance eligible. Afterwards, Northrop began interpreting the same language as a discretionary decision at the time of layoff without any parameters as to who would get the memo. The class all received the non-cash portion of severance because they were coded as severance eligible. The district court erred on the benefit claim for two alternative reasons. First, the class members would reasonably expect the clause requiring receipt of a memo means the VP of Human Resources merely notifies employees of their eligibility. Alternatively, whether the VP of Human Resources has any discretion to deliver the memo is ambiguous and objective extrinsic evidence reveals Human Resources merely notified those employees that they were eligible. The language is clear delivery of the memo is required to all of the otherwise eligible employees. The administrator must apply the language as it would be understood by a person of average intelligence and experience in the participant's shoes. The participants are employees of a federal defense contractor. That defense contractor uses severance for the purpose of inducing retention of employees, not merely as a gratuitous act to soften a blow. The federal government builds the cost of severance into those contracts and needs those employees to stay on through the end of the contract even when times are uncertain. The class would expect a single discretionary business decision on eligibility. They would expect management to make discretionary business decisions on who is eligible and for Human Resources to merely check off the boxes. They would not expect HR to make a discretionary business decision that could conflict with one already made by management. So, Counsel, just reading from the language of the plan, Section 3.04 provides the plan administrator with full and final discretion to determine eligibility, right? And then Section 4.01 defines the plan administrator to be the chief Human Resources and administrative officer. Is that different from the vice president of Human Resources, or does the vice president of Human Resources under the plan have the discretion to make the initial eligibility determination as set forth in the plan? It is different from the vice president of Human Resources, and our position is, because the plan says you must receive a memo, that vice president of Human Resources does not have discretion to arbitrarily decide whether or not to deliver the memo. So similar to an ERISA case where there's... How do we know that? Is there some corporate bylaw that specifies that? No, Your Honor. It's through the decade of practice that way. Everybody automatically receives a memo. Trying to figure out authority within a corporation depends on, well, written pieces of paper. I gather from this answer that you're not relying on anything either in the language of the plan or in the language of the corporate organizing papers. We're relying on the language of the plan that it doesn't grant any discretion to withhold the memo. So in insurance policy cases under ERISA, often an insurer must be satisfied with the proof of claim. However, the legal authority is that the claimant doesn't lose just because the insurer withholds its satisfaction. That satisfaction must be based on parameters found in the plan. But there aren't any parameters here, right? I'm sorry, Your Honor? There are no parameters here specified in the plan? The parameters would be that people have already been notified that they're eligible by management, which is how they get coded as severance eligible. They work in the United States and they work over 20 hours a week. Does ERISA outlaw plans that provide complete discretion in granting benefits? Any grant of discretion is always reviewed for at least being arbitrary and capricious. And under that, that means that you have to look to something in the plan for which that discretion was exercised. So the answer is you think such a plan is illegal? It's not illegal. There can be an embedded business decision on who will be eligible. However, in this case, you have to look at... Or who would be granted benefits. Pardon? Or who would be granted benefits. Or who would be eligible. Not just eligible, but granted benefits. That can occur. But Your Honors must look to all of the language in the plan and not render any portion superfluous. The plan already states eligible employees are notified by their management. They're covered by the plan, which reflects that business decision on who will be eligible, which doesn't have to have any parameters. There's no need for that management earlier decision. If Northrop can exercise discretion to deliver the memo or not for any reason at all. Counsel, at Appendix 27, which is another part of the plan, it says you must be designated as eligible for this plan by the Vice President of Human Resources. Doesn't that provide the Vice President of Human Resources the discretion to determine eligibility? No, Your Honor. It merely says you must be designated, but what that means is checking off the boxes. This person has already been chosen to be eligible by management, and this person works in the United States and over 20 hours a week. There's nothing in that language that communicates to a participant that a VP of Human Resources can withhold the memo for any reason at all at the time of the layoff. If the result is unclear, there is a patent ambiguity. Silence plus structure of the surrounding language creates an ambiguity. The plan is silent on whether the VP of Human Resources exercises discretion in delivering the memo. The memo clause is near the management notification clause, which already reflects the business decision on eligibility. If you go in the direction of arguing the plan is ambiguous, doesn't it give the administrator discretion to interpret it in cases of ambiguities? It does, but the court reviews how the administrator disambiguates the ambiguity, and in this case, if it's not a patent ambiguity, it's a latent ambiguity, and the objective extrinsic evidence shows how that's disambiguated. When management decided who was covered, Northrop coded those employees as eligible for severance. Upon entry of a layoff separation code, these employees would automatically receive the non-cash portion of the severance without regard to whether they were given a memo, though the eligibility criteria for cash and non-cash is the same. Before October 2011, there was no approval required to deliver the memo. It was an automatic task. Northrop's own HR executives expected the memo was a mere notification of meeting the criteria, and this objective extrinsic evidence shows human resources must deliver the memo to the people that meet the above criteria. District Court also erred in granting summary judgment on the breach of fiduciary duty claim because Northrop changed its interpretation of the plan terms but failed to disclose this change. Before October 2011, all employees who otherwise met the criteria received a memo. Northrop issued the memos based on who was coded as eligible for severance, which reflected management's decisions on who was covered. In October 2011, technical services began requiring authorization at the time of layoff to deliver the memo to laid-off employees, even if they were already coded as eligible for severance. Northrop never disclosed this change. For over a decade, employees who earned everybody in a group coded as eligible for severance got the memo. Northrop knew its employees expected they would receive the memo and severance if they were so coded. It knew it should disclose the change but didn't. Human resources professionals discussed in their messages that they acknowledged the need to disclose this change and that they never did. A fiduciary cannot lead employees to believe an unclear plan term is applied one way for over a decade and then change that interpretation without any disclosure to the employees it knows will be affected. And do we need to worry about reliance with respect to that? No, Your Honor. Detrimental reliance is not an element. However, we have both plaintiffs who testified in this case that had they known, they would have done something differently. One says he would have looked for opportunities in other sectors that were providing severance. Another said he would have looked for a job elsewhere, and that would have cut against Northrop because it needs to retain its employees to complete its contracts for defense. Thank you, Counsel. Mr. Gleickstein. Let me just grab my water. Thank you, Your Honor, and may it please the Court. Judge Ed Gleickstein on behalf of Appalachian-Northrop Grumman Corporation and the severance plan. Your Honor, the plan at issue in this case is extremely clear. To obtain severance benefits following a layoff, an employee must be designated as eligible by receiving a memo from Human Resources addressed to them by name. This requirement appears on the very first page of the severance plan, which is Appendix 26 to our brief, and then it appears twice on the second page of the plan, first under the heading Eligible Employees, and again under the heading Conditions for Receiving Benefits. In each of these instances, the plan expressly states that an employee must get an eligibility memo, must be designated by management to receive benefits. The purpose of this requirement and the way that Northrop has always interpreted and applied it is to allow management in individual sectors, programs, and divisions within those sectors to exercise business judgment as to whether to award severance in the event of a particular reduction in force. So what do we do with the district court's finding and plaintiff's evidence to the effect that there was actually a pretty significant change in policy in the fall of 2011? Well, as an initial matter, Judge Hamilton, I think it's important to distinguish between to identify what this change in policy consisted of. So we agree that in 2011, in the technical services sector, there was a change in the way that management exercised the discretion that was delegated to it under the terms of the plan. That was part of a broader overhaul of the way that technical services dealt with severance issues, including a schedule for awarding benefits as well as eligibility for receiving benefits in the first place. As we explain in the brief, that was not a change in plan interpretation, but actually an exercise of the discretion afforded to management, and therefore an action taken by Northrop in its role as employer, not as fiduciary. So all that shows is that in 2011, management decided to use a different set of criteria to decide whether to award severance or not. There seems to be evidence, though, that that's not how the change was viewed within the company, with the messages and debates about notifying employees who had been relying on a very different practice. I have to say, I'm also curious as to what you think the point is of an utterly discretionary severance system. I thought their promise is meant to induce reliance and continued service and so on, and you're telling us this is a plan that allows management, when it no longer is needed to serve that purpose, to abandon the benefits. So to answer the first part of your question first, I actually think there is no evidence in the record that I'm aware of, and I don't think Plaintiff has pointed to any record evidence, that people understood prior to 2011 that there was an unconditional grant of severance benefits if you met the other criteria in the plan. That's not something that appears in the claim letters that Plaintiffs submitted after they were denied severance in 2012. It's really a theory that emerges after the litigation begins and Plaintiffs' lawyers start to litigate the case. I'm looking at the messages from August 27, 2012 and July of 2012 within HR. It looks like it's saying ERISA governs this. We had to provide notice that the benefit was going away. I think Your Honor is referring to a text message from August 29, 2012, which is after Plaintiffs filed this claim. So I don't think that could possibly show reliance before 2012. The second point though, Your Honor. Well, no, it's referring to a practice that had been in place for years. That's the way I understand it. I think what that document is referring to, it's an internal HR discussion after this claim was brought, and it's folks within HR, not the high-level decision makers, by the way, but low-level folks asking questions about what the HR policy is with respect to the technical services sector. So there's no evidence that this was ever communicated outside of HR before 2012, and there's certainly no evidence that Plaintiffs here believed or had that understanding. Well, I thought they were testifying. They had the understanding that if you were designated eligible, you would get the benefit. Well, I agree with that. I know you disagree with that, and you think it's not a reasonable interpretation of the plan, but that's what they're saying. And it does seem to be consistent with the practice, if not the text of the plan. I actually don't disagree that if they were designated as eligible, they would get benefits. I think the problem was that they were never designated as eligible under the plan's expressed terms. And I would point out, by the way, even under Plaintiffs' interpretation of the plan, which is that there's some kind of initial management designation that's made to employees in writing, and then subsequently memorandums provided by Human Resources at the time of layoff. Even if you accepted that interpretation, plaintiffs never got an initial determination from management in writing. I mean, that's conceded on footnote. Footnote 1 of the reply brief concedes that fact, says it is not an issue in this litigation as to whether they received this notification from management. And plaintiffs then say that wasn't a basis of the administrator's decision, and therefore Norfolk can't rely on it. And I think that just sort of fundamentally confuses what's going on in this case. From the beginning, the administrator said you need a memo in order to be designated as eligible. Plaintiffs have now offered a contrary interpretation, which we think is not reasonable on its face, is certainly not so unreasonable that a contrary interpretation would be arbitrary and capricious. And finally, even if they could overcome both of those hurdles, wouldn't even authorize plaintiffs themselves to recover benefits. So I think there's three independently fatal reasons why that interpretation can't carry the day. I do want to answer your question, Judge Hamilton, about why the plan is structured this way. I mean, the reason that Northrop gives discretion to business units is that the ability to offer severance is context-dependent and has to be made with reference to the particular business decisions for particular units, programs, divisions at the time. So the technical services- At the time of starting the project or when you lay people off? Well, I think it's always a fluid and evolving standard, which is why management makes the decision at the time of layoff. And the record here shows that the ILMD, Integrated Logistics and Management Division, which is the division that plaintiffs were a part of, in 2012, they were facing economic headwinds. It's a low-margin business compared to many other aspects of the company. And there was a concern about government sequestration and budget cuts for the major customer for this particular division. So management made, I think, an indisputably reasonable decision that it was better to focus resources on protecting and growing current programs as opposed to paying severance. And that's a determination that management was entitled to make under the plan, and that makes sense for the employees who remain at the company and for the company going forward. I take it everybody at Grumman now, at Northrop Grumman, now understands they shouldn't count on any severance? I don't know. I mean, I don't think that there was ever- They'd be suckers. That is the message. It's not only the message sent by the actions, but by your brief. That a Grumman's official policy to its employees is, don't count on us, we will sell you out in the end. Now, it may have the legal right to do that, but of course there are consequences in the market. Your Honor, I think the message that Northrop Grumman sends to its employees is the message that's in the plan documents. If any employee wanted to look at the plan document, they would see that they could be eligible to participate in the severance plan if they're designated at the time. Look, it may not be a message that will help it attract high quality workers, but Grumman does have to understand that that's its message. I think – I mean, Your Honor, I think that's consistent with, for example, the approach – well, it's consistent with the approach in the- I am trying to distinguish the message from the legality of the message. So let me just talk briefly about- And if you prevail in this case, you will succeed in having an opinion every employee at Grumman can point to, to say we absolutely cannot rely on management when it comes to severance benefits. Your Honor, in McNabb v. General Motors, this court said- But surely you have to understand that the employees will get the message. All right. I mean, I have nothing further. If the court has no further questions, we would ask the court to affirm the judgment below. Thank you very much. The case is taken under reboxment.